[Crim. No. 16870. Second Dist., Div. Five. June 23, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME BRENT HORNER, Defendant and Appellant.

**COUNSEL**

Jerrold Levitin for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Laurence M. Sarnoff, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant was charged by information with violation of Penal Code section 12420 (possession of a shell, cartridge, or bomb capable of emitting tear gas). Defendant's motion to dismiss pursuant to Penal Code section 995 was denied, and he pled not guilty. Defendant personally and all counsel waived a jury trial, and the case was submitted on the transcript of the preliminary hearing. The court found defendant guilty as charged. Criminal proceedings were suspended, and defendant was referred to the California Youth Authority for acceptance. On February 13, 1969, probation was denied and defendant was committed to the Youth Authority for the term prescribed by law. Defendant appeals from the judgment and the order denying his motion for new trial.[1]

On July 12, 1968 at 9 p.m., Officers James P. Kelley and Steve Henderson of the Los Angeles Police Department were driving eastbound on Sunset Boulevard in their marked police car. They had just passed Vine Street and were approaching the Kaleidoscope Dance Hall when they were stopped by the Kaleidoscope security guard and a man named Joe Hernandez. The two men complained to the officers that a man in a blue foreign car had just threatened them with a rifle. As they were talking, one of the witnesses looked up, pointed to a blue Toyota, and said, "There goes the car right there, and there's the guy that did it." The officers followed the Toyota for two or three blocks and pulled it over for investigation. There were three persons in the car, including defendant, who was driving. Officer Henderson observed a B.B. gun in the back seat of the Toyota,

---

[1]The purported appeal from the order denying a new trial is dismissed. (*People v. Ing,* 65 Cal.2d 603, 614 [55 Cal.Rptr. 902, 422 P.2d 590].)

and the three occupants were placed under arrest for assault with a deadly weapon.

The officers asked defendant for permission to search his car, and defendant handed Officer Kelley the keys. Officer Kelley opened the trunk, and found three rifles. Defendant was informed of his constitutional rights, and he said that he did not wish to remain silent. When asked whether he wished to speak to an attorney, defendant replied, "I'll think about it." No further statement was elicited at that time. Defendant was taken to the Hollywood police station, where he was searched. In the course of the search, the officers found a silver canister in the defendant's right front pocket. Defendant was then asked whether he had decided if he wanted to talk to the officers and whether he wanted to speak to an attorney. He said he would talk and did not need an attorney.[2] When asked what the canister contained, defendant replied that it contained tear gas, and that "it was C.S."

It was stipulated that Mr. L. B. Miller, an expert forensic chemist employed by the Los Angeles Police Department, was deemed to have testified that he made a chemical and physical examination of the canister removed from defendant's person, and in his opinion the canister contained a lachrymal agent "in the manner of tear gas."

No testimony was offered on behalf of defendant.

On appeal, defendant first contends that Penal Code sections 12401 and 12420 as they read at the time of his arrest and trial are unconstitutionally vague. At the time of his arrest and trial, section 12420 provided as follows: "Any person, firm, or corporation who within this state knowingly sells or offers for sale, possesses or transports any form of shell, cartridge, or bomb containing or capable of emitting tear gas, or any weapon designed for the use of such shell, cartridge or bomb, except as permitted under the provisions of this chapter, is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison not to exceed two years or by a fine not to exceed two thousand dollars ($2,000), or by both."

At the time of defendant's arrest and trial, section 12401 provided as follows: " 'Tear gas' as used in this chapter shall apply to and include all liquid, gaseous or solid substances intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise

---

[2]The equivocal answer of defendant when he was first given his *Miranda* warning by the officer left open to a subsequent determination his decision to make a statement in the absence of counsel. (Cf. *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625].)

dispersed in the air, but does not apply to, and shall not include, pesticides, dog repellants, and other substances not intended to be used to produce discomfort or injury to human beings."

Defendant argues that under section 12401, a substance either is or is not tear gas, depending upon its intended use, and the statute does not specify whether the relevant intention is that of the manufacturer, the seller, or the buyer.

■ As a general rule, "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (*Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) Defendant's argument assumes that section 12401 constitutes the statutory definition of the term "tear gas." ■ However, the words "include" and "including" are ordinarily words of enlargement, and not of limitation. (*People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 639 [268 P.2d 723]; *Koenig* v. *Johnson,* 71 Cal.App.2d 739, 747 [163 P.2d 736].) Thus, in *Koenig* v. *Johnson, supra,* a statute which provided that the term "business trust" as used therein should "include" every business organization consisting essentially of an arrangement whereby property is conveyed to trustees was held not to exclude from its provisions a trust having but one trustee. In *People* v. *Western Air Lines, Inc., supra,* the court held that a section of the Public Utilities Code which provided that the term "public utility" "includes" a number of enumerated entities, did not constitute the exclusive definition for purposes of other sections of the code. Viewed in this light, section 12401 does not define "tear gas," but rather expands the meaning of that term to include substances not ordinarily understood to be tear gas. The statute applies to *all* liquid, gaseous or solid substances intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispersed in the air, with the exception of those substances so enumerated. Therefore, section 12401 and 12420, as of the time of arrest and trial, would prohibit the possession of substances not ordinarily thought of as tear gas, such as the chemical, mace (*Cook* v. *Superior Court,* 4 Cal.App.3d 822, 828 [84 Cal.Rptr. 664]), and represents an attempt by the Legislature to keep pace with man's continually developing capacity to inflict discomfort or harm on his fellow-man, including the use of chemicals. (See *People* v. *Autterson,* 261 Cal.App.2d 627 [68 Cal.Rptr. 113], wherein it was held that a defendant need not know that the substance in his possession is tear gas in order to violate section 12420, so long as he knows that the substance is intended to produce temporary physical discomfort through being dispersed in the air.)

■ Both defendant and the police chemist (the latter through stipulation of the parties) stated that the canister in question contained tear gas. In the instant case, we do not need to apply the expanded definition of "tear gas" in section 12401, and its intention test. Such a test is only necessary when a defendant is charged with the possession of a substance not ordinarily thought of as tear gas. We therefore do not decide whether section 12401, in failing to indicate whose intention determines guilt, is unconstitutionally vague. We should not hold a statute unconstitutional on the basis of a hypothetical situation not before us (*People* v. *Williams*, 247 Cal.App.2d 169 [55 Cal.Rptr. 434]) so long as the statute as applied is constitutional. (*People* v. *Morales*, 252 Cal.App.2d 537, 541-542 [60 Cal.Rptr. 671].)

In the instant case, there is no question but that the substance in the canister was tear gas as that term is ordinarily understood, and that defendant knew it was tear gas. ■ A statute is not unconstitutionally uncertain if general terms are used therein without definition, where the term is one which is commonly used or understood, or has acquired a well defined meaning. (*People* v. *Victor*, 62 Cal.2d 280 [42 Cal.Rptr. 199, 398 P.2d 391]; 82 C.J.S., Statutes, § 68.) We believe that the term "tear gas," in a time when civil turbulence, if not ubiquitous, is at least prevalent, is adequately understood by the public at large. ■ Sections 12401 and 12420 as they are applied in the instant case are not unduly vague.

■ Defendant next argues that the submission on the transcript of the preliminary hearing was made without his effective consent. The record discloses that the defendant was fully advised as to his right to confront the witnesses against him, and that he duly waived that right. The submission upon the transcript was relative only to the need to call the witnesses who testified at the preliminary hearing. The stipulated submission specifically reserved the right of either party to produce additional evidence. In *In re Mosley*, 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473], the court held that where a defendant submits his case on the transcript of the preliminary hearing and the evidence is such as to offer him no hope of acquittal, such submission is tantamount to a plea of guilty, and must be accompanied by the constitutional and statutory safeguards which such a plea entails. In that case, the defendant personally agreed to waive his right to a jury trial and submit the matter on the transcript of the preliminary hearing without further testimony. The court found that defendant had personally acquiesced in this waiver of his rights and that his counsel's subsequent submission on the transcript of the preliminary hearing, in effect a guilty plea, was the defendant's own plea. (*In re Martinez*, 52 Cal.2d 808 [345 P.2d 449].) The court there held that defendant's conduct at the trial, considered together with his knowledge of the evidence which

had been produced against him at the preliminary hearing, left little room for speculation that he was not fully aware of the import of submitting the case without further testimony, and that the waiver of his rights was therefore knowledgeable.

In the instant case, the defendant expressly waived his right to a jury trial, and agreed that the court could read the transcript of the preliminary hearing in lieu of the prosecution recalling the witnesses who had testified at that hearing, but, unlike *Mosley,* did not expressly agree that the case should be submitted on that transcript without further testimony. The stipulation entered into expressly reserved the right of both parties to offer additional testimony. Therefore, argues defendant, his counsel's subsequent submission without offering additional testimony was tantamount to a plea of guilty, a plea which defendant did not personally enter into. However, in the absence of any showing by defendant that there was some additional testimony available which could have been offered on his behalf, we must assume he was aware that the stipulation that the court could read the preliminary transcript was as much a plea of guilty as was the submission in *Mosley.*[3] Were we to follow defendant's logic to its conclusion, he would have tactically provided himself with a built-in reversal by merely failing to put on the additional evidence which he reserved the right to produce. The contention is without merit.

■ Defendant finally contends that his counsel's submission of the case on the transcript of the preliminary hearing reduced his trial to a "farce or a sham" under the rule of *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]. In *Ibarra,* the State Supreme Court reversed a conviction on a showing that trial counsel, through his lack of preparation and ignorance of the law, withdrew a crucial defense from the case and thereby reduced the trial to a sham and a farce. In the instant action, defense counsel submitted the case on the transcript of the preliminary hearing when there did not appear to be any evidence which could be offered on defendant's behalf. In the absence of a showing that there was some relevant evidence that could be presented to support an acquittal, we cannot say that counsel's actions warrant a reversal. Moreover, it is not true that counsel made no efforts on defendant's behalf. Prior to submission, he challenged the admissibility of defendant's statements to the police, and argued that the evidence was insufficient to sustain conviction. Counsel's decision to submit may well have been based upon tactical

---

[3]At the time of defendant's probation and sentencing hearing, defendant made a motion for a new trial, alleging that he had located one of the persons whom defendant had allegedly threatened with a rifle. The motion for new trial was denied, the court holding that nothing this witness might say could have any relevance to defendant's guilt or innocence of the charge of possession of tear gas.

considerations which do not appear in the record (see *People* v. *Garrison,* 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731]), such as the possibility that the court would be more willing to grant probation after a submission, rather than after a contested trial. (See *In re Mosley, supra,* 1 Cal.3d 913, 927.)

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.