[Crim. No. 7235. Fourth Dist.. Div. Two. Aug. 1. 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL LEANDRO RODRIQUEZ, Defendant and Appellant.

**COUNSEL**

Gary K. Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Conrad D. Petermann and Cecilia H. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUFMAN, J.**—Raul Leandro Rodriquez (hereafter "defendant") was convicted after a jury trial of violating Penal Code, section 4574 (possession of a deadly weapon, to wit, a razor blade, in county jail).[1] He appeals from the judgment (order granting probation).

---

[1] The information also charged defendant with possession of drugs in county jail (Pen. Code, § 4573.6) and with possession of other items termed "deadly weapons." At the close of the People's case, defendant made a motion to dismiss. (Pen. Code, § 1118.1.) This motion was granted as to all of the alleged deadly weapons, except the razor blade. The jury returned a verdict of not guilty on the drug possession count.

On April 19, 1974, defendant was in tank 4 of the Riverside County jail. He was the sole occupant of his cell, a Danny Carter having moved out two weeks earlier. All of Carter's belongings had been removed with him. The sides and back of defendant's cell are solid walls. The top and front of the rectangular cell are open bars. There are two bunks along the long wall. Defendant occupied the lower bunk.

On the 19th the jail staff made a routine search of the facility. Defendant was in the shower. His shower was interrupted and he was taken to another part of the jail, along with the other inmates from tank 4. The officers found three brown paper bags on the top bunk of defendant's cell. These bags are used in the jail to hold personal effects. One of the bags was labeled "Raul." The bags were standing upright with their tops open.

In one bag, under a stack of envelopes addressed to defendant, was a toothbrush handle. The top of the toothbrush was burned and had a slot in it. In a second bag, under a similar stack of envelopes, was a matchbox containing, among other things, a portion of a razor blade. The razor blade fits into the slot in the toothbrush and is secured by melting the plastic.

Weapons similar to the razor blade/toothbrush found in defendant's cell are commonly used in jail fights. They can inflict serious injury. Prosecution witnesses testified such items are primarily used, if not solely used, as weapons. These weapons can inflict neck wounds, causing profuse bleeding, which could result in death if not immediately treated.

Moses Duron, a jail trustee on April 19, was a primary witness for the defense. He testified the toothbrush and razor blade were his. He claimed he used them for handicrafts and for sharpening pencils. He explained that he stored the razor blade and toothbrush in defendant's cell without defendant's knowledge. Duron demonstrated, with court permission, how he would use the razor blade to cut cellophane.[2]

Defendant testified that the toothbrush and razor blade were not his, and that he did not know they were in his cell. He claimed he would have no use for such items.

---

[2]The court allowed Duron to secure the razor blade to the toothbrush for the demonstration. This showed conclusively that the razor blade and toothbrush could be combined to form a single item. The attendant alteration of the evidence was consented to by all parties.

Defendant's assertions were rebutted, however, by a crucial discrepancy in the evidence. Duron testified he last hid the matchbox containing the razor blade by reaching through the front bars of the cell and placing it between the mattress and the frame of the top bunk. He also testified the toothbrush was getting too short for effective use (apparently due to repeated assembly and disassembly), and he had put it in a trash-filled paper bag on the floor of defendant's cell. However, both items were found six or seven feet from the front of the cell, hidden among defendant's personal effects. Duron testified he could reach in about two feet into the cell. Therefore he could not have hidden the items in the location where they were found. Defendant offered no explanation of substance to counter the resulting inference that the weapon was under his dominion and control.[3]

Defendant was sentenced to prison for the term prescribed by law. Execution of the sentence was suspended and defendant was granted three years probation on various terms and conditions, including a six-month term in Riverside County jail.

### Contentions

Defendant's arguments for reversal fall into two basic categories. He cites three errors regarding proof of intended violent use of the razor blade. He also urges Penal Code, section 4574 is unconstitutionally vague.

### Discussion and Disposition

1. Defendant makes three related contentions about proof of his intended violent use: (1) intended violent use is an element of the People's prima facie case, (2) the jury was incorrectly instructed in that regard, and (3) the evidence of his intended violent use is insufficient. None of these contentions has merit.

---

[3]There was some evidence that it is possible to pass items from adjoining cells. The bars on a cell top are wide enough apart to permit at least partial passage of an arm. An inmate could, therefore, reach over the wall and blindly drop or toss an item into the next cell.

Tank 4 is a maximum security area and inmates are generally kept locked in their cells. There was no evidence another inmate came into defendant's cell and put the weapon in the paper bags.

■ The elements of possession of a deadly weapon in county jail may be gleaned from the statute.[4] They are: (1) possession (2) of a deadly weapon, (3) without authorization, (4) by one lawfully committed to county jail. In the context of this case, specific intent could be an element of the prima facie case only if it is subsumed under "possession" or "deadly weapon."[5]

In a sense, this is a question of first impression—there are no cases directly addressing this aspect of section 4574. However, the question has been decided regarding other, similar, sections of the Penal Code. We find the reasoning of those cases persuasive.

Section 4502 proscribes possession of certain weapons in state prison.[6] Cases interpreting section 4502 conclude intended use of any sort need not be proven. (See, e.g., *People* v. *Steely,* 266 Cal.App.2d 591, 594-595 [72 Cal.Rptr. 368]; *People* v. *Wells,* 261 Cal.App.2d 468, 478-479 [68 Cal.Rptr. 400].) Both 4502 and 4574 proscribe simple possession and not use. The purpose of both sections is the same: to protect inmates and officers from the danger of armed assault. ■ We hold section 4574 is subject to the same rule as section 4502: intended violent use is not an element of proof of possession. (See also *People* v. *Satchell,* 6 Cal.3d 28, 42 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383].)

---

[4]Penal Code, section 4574: "*Except when otherwise authorized* by law, or when authorized by the person in charge of the prison or other institution referred to in this section or by an officer of the institution empowered by the person in charge of the institution to give such authorization, any person, who knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison or prison road camp or prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the state prison are located under the custody of prison officials, officers, or employees, or any jail or any county road camp in this State, or within the grounds belonging or adjacent to any such institution, any firearms, deadly weapons or explosives, and *any person who, while lawfully confined in a jail or county road camp possesses therein any firearm, deadly weapon, or explosive, is guilty of a felony* and punishable by imprisonment in the state prison for not less than one year."

Hereafter all statutory references are to the Penal Code.

[5]Manifestly specific intent is irrelevant to proof of lawful commitment. It may be relevant to authorization (e.g., whether the scope of authority granted has been exceeded), but that is not germane to this appeal.

[6]Penal Code, section 4502 states in relevant part: "Every person confined in a state prison . . . [who] possesses . . . any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles or any explosive substance or any dirk or dagger or sharp instrument, or any pistol, revolver or other firearm, is guilty of a felony . . . ."

We observe that cases applying this section often refer to it as prohibiting possession of deadly weapons. (See, e.g., *In re Lopez,* 3 Cal.3d 147, 148 [89 Cal.Rptr. 614, 474 P.2d 430].)

We turn to whether intended use is an element of proof of "deadly weapon." A "deadly weapon" is one " ' . . . likely to produce death or great bodily injury.' " (*People* v. *Moran,* 33 Cal.App.3d 724, 730 [109 Cal.Rptr. 287]; *People* v. *Helms,* 242 Cal.App.2d 476, 486 [51 Cal.Rptr. 484].) Certain items are inherently deadly weapons. (*People* v. *Fuqua,* 58 Cal. 245, 247; cf. *People* v. *Stinson,* 8 Cal.App.3d 497, 501 [87 Cal.Rptr. 537]; *People* v. *Deane,* 259 Cal.App.2d 82, 89 [66 Cal.Rptr. 177].) ▮ Most objects, including a razor blade (*People* v. *Richardson,* 176 Cal.App.2d 238, 239-240 [1 Cal.Rptr. 306]), may or may not be deadly, depending on the factual context. This is so because they also may be used for legitimate purposes. Whether such an item is a deadly weapon is a question of fact to be determined from surrounding circumstances. (See, e.g., *People* v. *Fuqua, supra,* 58 Cal. at p. 247; *People* v. *Moran, supra,* 33 Cal.App.3d at p. 730.)

▮ Section 4574 proscribes possession, not use, as noted above. Therefore, the statute is concerned with the potential of the item in question. Reading the statute as a whole, it is evident the Legislature enacted no halfway measure. Effective protection of inmates and officers from armed attack depends upon prohibition of possession of *all* deadly weapons in jail. (Cf. *People* v. *Satchell, supra,* 6 Cal.3d at p. 42.) This valid legislative objective does not except weapons with dangerous capabilities which also have innocent uses. Speaking in regard to section 4502, *People* v. *Wells, supra,* 261 Cal.App.2d at pages 478-479 noted the statute ". . . serves an objective demanding relative inflexibility and relatively strict liability. . . . It is one of the 'stringent statutes governing prison safety.' (*People* v. *Romo* (1967) 256 Cal.App.2d 589, 595 [64 Cal.Rptr. 151].)" The same may be said of section 4574. It is plain a razor blade's potential for use as a deadly weapon does not depend on an intended violent use.

▮ Evidence of harmless use by jail inmates, including defendant, may be relevant if it bears on the likelihood that an item will cause death or serious bodily injury. Such evidence is defensive, however. It is not necessary for the People to prove the item has no harmless use. Such a construction of section 4574 would effectively nullify its purpose.

By contending there must be proof of his intended violent use, defendant in effect urges section 4574 creates a specific intent crime. We reject this contention. ▮ We hold specific intent is not an element of the prima facie case of the violation of section 4574.

Defendant contends the jury was improperly instructed in regard to his intended use of the razor blade. In fact, however, the jury was instructed, at defendant's request, that the People had to demonstrate beyond a reasonable doubt that the intended use of the razor blade was dangerous rather than harmless.[7] ■ This instruction was error. However, the error was vastly in the favor of defendant. It certainly does not justify reversal.

■ Defendant also contends there is insufficient evidence of his intended violent use. Such proof is not necessary. ■ Further, there is sufficient proof that the razor blade is a deadly weapon. Essentially, the only evidence of the razor blade's harmless use is the testimony of Moses Duron. In regard to defendant, this testimony amounts to testimony about harmless use in the abstract. That is, the testimony establishes that it is possible to use the razor blade in a harmless manner. There is contrary evidence of equal character and quality. The sheriff's officers testified the primary, if not the sole, use of the toothbrush/razor blade is as a weapon in jailhouse fights. The officers also testified to the serious nature of the wounds caused thereby. This is substantial evidence showing the razor blade is a weapon likely to cause death or great bodily injury.

2. ■ Defendant contends the term "deadly weapon" renders section 4574 unconstitutionally vague. This contention may not be sustained.

We have some doubt as to whether defendant may properly raise a vagueness objection to section 4574. As was pointed out in *People* v. *Barksdale,* 8 Cal.3d 320 [105 Cal.Rptr. 1, 503 P.2d 257], "When one is engaged upon a course of conduct which is clearly criminal, the nature of the aggravation by which the law measures the degree of the crime may be defined by [vague words like 'reasonable' or 'substantial']. In such instances the wrongdoer cannot be heard to complain on grounds of vagueness as the essential element upon which the void-for-vagueness doctrine rests—the lack of a fair notice of proscribed conduct—is itself lacking." (8 Cal.3d at p. 328, fn. 3; see also *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) Here inmate

---

[7]The court instructed: "In Count II the burden is on the prosecution to prove beyond a reasonable doubt that the intended use of the object or instrument in question was for a dangerous rather than a harmless purpose. If you have a reasonable doubt as to whether the intended use of the object or instrument in question was for a dangerous purpose, you must find the Defendant not guilty of Count II."

possession of a razor blade, per se, was prohibited by jail regulation. It may be fairly inferred from the record that defendant was aware of this regulation. Thus defendant knew possessing the razor blade was proscribed conduct, without regard to the application of section 4574. We are willing, however, to address defendant's contention because knowing violation of a prison regulation well may not indicate fair notice of the commission of a felony.

"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *(Connally* v. *General Construction Co.,* 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]; *People* v. *Barksdale, supra,* 8 Cal.3d at p. 327; *People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974].) The requisite certainty may be supplied by reference to either long established usage *(People* v. *Victor,* 62 Cal.2d 280, 298-299 [42 Cal.Rptr. 199, 398 P.2d 391], *People* v. *Nunn,* 46 Cal.2d 460, 467-469 [296 P.2d 813], app. dism. 352 U.S. 883 [1 L.Ed.2d 82, 77 S.Ct. 126]), or legislative purpose *(People* v. *Grubb,* 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100]). Similarly, if the terms have a plain commonsense meaning, which is well settled, the statute is not vague. *(Keeler* v. *Superior Court,* 2 Cal.3d 619, 635 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

If the terms "deadly" and "weapon" are examined in various dictionaries, a plain, commonsense definition of "deadly weapon" appears: an instrument capable of being used offensively or defensively and likely to cause death or destruction. (See Black's Law Dict. (4th ed. 1957); The American Heritage Dict. of the English Language (1969); Webster's Third New Internat. Dict. (Unabridged 1964); Webster's Seventh New Collegiate Dict. (1966).) We do not find this definition ambiguous. The consistency among the sources indicates the meaning is settled.

The definition of a "deadly weapon" as ". . . one likely to produce death or great bodily injury" is equally established in California case law (see, e.g., *People* v. *Fuqua, supra,* 58 Cal. at p. 247; *People* v. *Morlock,* 46 Cal.2d 141, 145 [292 P.2d 897]; *People* v. *Moran, supra,* 33 Cal.App.3d at p. 730), and in other jurisdictions (see cases collected in 11 Words and Phrases 205-231 and supp. thereto). The close parallel between the dictionary definition and the one employed in the case law simply

reinforces the conclusion that "deadly weapon" is not vague or ambiguous.

■ Moreover, section 4574 has a clear purpose: proscribing inmate possession of tangible items capable of use for armed attack and posing a serious threat to jail security. (See *In re Jordan,* 12 Cal.3d 575, 579, fn. 5 [116 Cal.Rptr. 371, 526 P.2d 523], and accompanying text; cf. *People* v. *Wells,* 68 Cal.App.2d 476, 481 [156 P.2d 979].) ■ The Legislature is not required to list every deadly weapon to accomplish this goal. (*People* v. *Harris,* 98 Cal.App.2d 662, 666 [220 P.2d 812].) Use of a generic term does not, ipso facto, make a statute vague. (*People* v. *Horner,* 9 Cal.App.3d 23, 28 [87 Cal.Rptr. 917].) The statute represents an attempt by the Legislature to keep pace with man's developing capacity to inflict serious harm, a problem compounded by inmate ingenuity engendered by forced idleness. (Cf. *ibid.*)

■ Reasonable certainty is all that is required of a statute. (*In re Newbern,* 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *McCaughan, supra,* 49 Cal.2d at p. 414.) We are unconcerned that the statute may be difficult to apply. ■ A difficult standard does not make a statute unconstitutionally vague.[8] (See *People* v. *Seale,* 274 Cal.App.2d 107, 115 [78 Cal.Rptr. 811].) "[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." (*United States* v. *National Dairy Corp.,* 372 U.S. 29, 32 [9 L.Ed.2d 561, 565, 83 S.Ct. 594]; see also *People* v. *Seale, supra,* 274 Cal.App.2d at p. 115.)

Moreover, except when First Amendment interests are involved (*In re Berry,* 68 Cal.2d 137, 152, fn. 11 [65 Cal.Rptr. 273, 436 P.2d 273]), the constitutional certainty of a statute is not determined by reference to hypothetical facts. (E.g., *People* v. *Horner, supra,* 9 Cal.App.3d at pp. 27-28.) "If *an accused* can reasonably understand by the terms of the statute that his conduct is prohibited, the statute is not vague. [Citation.] In determining the sufficiency of the notice, a statute must of necessity be examined in the light of the conduct with which the defendant is charged. [Citation.]" (*People* v. *Anderson,* 29 Cal.App.3d 551, 561 [105 Cal.Rptr. 664].) (Italics added.)

---

[8] As Justice Holmes observed. ". . . the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or short imprisonment . . .; he may incur the penalty of death." (*Nash* v. *United States,* 229 U.S. 373, 377 [57 L.Ed. 1232, 1235, 33 S.Ct. 780]; see also *County of Nevada* v. *MacMillen,* 11 Cal.3d 662, 673 [114 Cal.Rptr. 345, 522 P.2d 1345].)

Defendant points out, in substance, that virtually anything is capable of producing death. We are not concerned, however, with whether section 4574 is unconstitutionally vague in regard to a pillow or a pencil. We may not decide this appeal in the abstract. (*United States* v. *National Dairy Corp., supra,* 372 U.S. at p. 32 [9 L.Ed.2d at p. 565, 83 S.Ct. 594]; see also *People* v. *Seale, supra,* 274 Cal.App.2d at p. 115.) ▮▮▮ The question before us is whether section 4574 gives defendants adequate notice that possession of a razor blade in county jail is proscribed. We hold that it does. (Cf. *Canon* v. *Justice Court,* 61 Cal.2d 446, 450 [39 Cal.Rptr. 228, 393 P.2d 428].)

The judgment is affirmed.

Gardner, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied August 20, 1975.