[No. H028484. Sixth Dist. Apr. 20, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DAVID WESSON, Defendant and Appellant.

## COUNSEL

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Christina Vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, Acting P. J.**—Defendant Robert David Wesson appeals from a judgment of conviction entered after a jury found him guilty of sodomy by force (Pen. Code, § 286, subd. (c)(2)), inflicting corporal injury on a spouse (Pen. Code, § 273.5, subd. (a)), making criminal threats (Pen. Code, § 422), and attempting to dissuade a witness (Pen. Code, § 136.1, subd. (b)(2)). In a bifurcated trial, the court found that defendant had suffered a prior sex offense conviction under the "One Strike" law (Pen. Code, § 667.61, subd. (a)) and two prior serious felony convictions under the "Three Strikes" law (Pen. Code, § 1170.12, subd. (c)(2)). The trial court also found that defendant had served a prior prison term (Pen. Code, § 667.5, subd. (b)). The trial court sentenced defendant to 102 years to life in state prison. On appeal, defendant contends that the trial court erred in admitting documentary evidence rather than live testimony as propensity evidence under Evidence Code section 1108. We find no error and affirm the judgment.

## I. Statement of Facts

Defendant and the victim S.D. met at a Narcotics Anonymous meeting in 2001. They became romantically involved and began living together a few months later. Within a year, defendant began choking, hitting and spitting at S.D., and, on one occasion, he dragged her by the hair down a flight of cement stairs. Defendant's violence was sometimes triggered by S.D.'s use of drugs. S.D. reported this abuse to a physician at Planned Parenthood in 2002. However, she did not leave defendant, because she loved him, he promised to change, and she depended on his financial support.

When defendant began assaulting her almost every day, S.D. decided to look for another place to live. On the morning of November 25, 2003, S.D. was packing some boxes while defendant was at work. Defendant returned unexpectedly at noon, and he told her that he was checking to see if she was with another man. He threw the boxes at her, saying, "You're not going anywhere. I'm not going back to work, and I'm going to stay here and terrorize you all day." He also took her purse, car keys, and cell phone, and disabled her car. Defendant then dragged her by the hair out the front door, down the street to the driveway, and to the garage. After he ordered her to put away the boxes, she did. He also slapped, kicked, choked, and spit on her.

When they returned to the house, defendant pushed S.D. into the bedroom. He said, "I'm going to give you what you deserve," and that he was going to sodomize her. S.D. repeatedly stated, "Please don't. No." Nevertheless, defendant removed her pants and underwear, sodomized her, and put his fingers in her vagina. When he finished, she wiped herself with a tissue and threw it on the bedroom floor.

After S.D. got dressed, she pretended to be nice to defendant, and told him that she needed to go to the store for cigarettes. Defendant made her car operable and told her that if she was not back in 15 minutes he would beat her. S.D. drove to a friend's house and called 911. When she made the call, S.D. was crying and "in shock," because this was the first time that defendant had raped her. The 911 operator urged S.D. to remain at her friend's house, but S.D. was afraid that defendant would hurt her if she did not return.

When the police responded to the 911 call, defendant and S.D. were sitting on the front porch. Defendant turned to S.D. in disbelief and said, "You

called the cops?" S.D., who was "somewhat hysterical," showed the police where she had been raped. Her statements to the police were consistent with her trial testimony. However, though S.D. told Officer Steve Gibson that defendant pushed her face first into the ground, he did not observe any injuries on her face. He also did not observe any damage to her clothes.

S.D. told the police that she did not want to go to the hospital and did not want to get defendant in trouble. However, the police eventually transported her to the hospital for a sexual assault exam. S.D.'s statements to the nurse, Patricia Weiland, were consistent with her testimony at trial. According to Weiland, S.D. was stressed, angry, agitated, and fearful. S.D. had lacerations on her anus and some bruises, which were consistent with her account of the sexual assault. Weiland also explained that the anal injury was consistent with consensual sex. S.D. told Weiland that she had not used drugs during the previous 96 hours. S.D.'s blood and defendant's semen were found in her rectum and underwear. S.D. also experienced some vaginal bleeding. Weiland saw no marks on S.D. to show that she had been slapped, choked, hit, beaten, or dragged by her hair.

After S.D. returned from the hospital, defendant called her twice from jail. During the first call, he asked her not to "say anything else to the detectives." When he said that their sex was consensual, she said that it was not. He asked her not to say that, because the call was being recorded. He also said, "It was consensual, you were mad at me, that's all. All right? Please." When S.D. stated that she had already given a statement and told them everything, defendant said, "You have to do it again." Defendant called again, and S.D. said that he had raped her. He replied, "Will you please stop it? This phone call is recorded." He again urged her to change her statement to the police. S.D. stated, "You hit me, don't blame it on me." Defendant responded, "I know." He ended the conversation by saying, "Please don't tell them anymore, please just say that you were angry. Please."

Defendant continued to call S.D. after she obtained a restraining order. S.D. did not initially tell the police about defendant's calls, because she did not want him to get in trouble.

On the evening of the assault as well as on November 26 and 27, S.D. called the police in a hallucinatory state. She claimed that men, who were wearing masks and dresses, were peeking in her window. At trial, she was

unsure whether they were hallucinations, though she was learning in counseling that hallucinations can be caused by drug use coupled with posttraumatic stress disorder. S.D. had been using methamphetamine a couple of times a week during the weeks leading up to the assault. She also used methamphetamine immediately after the assault.

Officer Parker Hathaway photographed S.D.'s injuries on November 26, 2004. He noticed a discoloration near the temple area and a small scab on her wrist. She had no visible injuries on her arms or neck.[1]

Richard Ferry, a marriage and family therapist, testified as an expert on battered women's syndrome and domestic violence. He described the different phases of abusive relationships. He explained that women in abusive relationships tend to bond with their abusers as a survival strategy. They also have very low self-esteem. In his experience, false accusations are not common.

Ferry also testified about substance-induced psychotic disorder with hallucinations. This disorder can be caused by a history of cocaine or amphetamine use, and the symptoms can occur up to four weeks after the individual stops using drugs. The essential feature of this disorder is nonauditory hallucinations.

Evidence was also introduced to show that defendant had been convicted of forcible oral copulation and sexual battery in 1990. An excerpt from the information for the 1990 offenses, a notice of order to the sheriff that defendant had changed his plea, and an abstract of judgment showing that he had been convicted of these offenses were admitted as evidence.

The defense theory was that S.D. had consented to anal sex, and that defendant had not beaten her. Roger Silva, who owned the duplex where defendant and S.D. lived, testified that he went to the duplex on December 1, 2003, because S.D. had told him that she was moving out. S.D. had told Silva that defendant had beaten and raped her, but Silva did not see any injuries on her. When the couple signed the lease, S.D. argued with defendant. According to Silva, S.D. did not appear to be afraid of defendant and was more aggressive than defendant.

Robert Smith, defendant's friend, testified that he met S.D. through defendant. Initially, she "seemed vibrant," but she appeared to have begun

---

[1] S.D. testified that these photographs were taken six months to a year prior to the present incident. She also testified that photographs of bruises on her arms and legs were taken "days after the incident."

using drugs after about six months. Defendant appeared to love her very much. Smith never saw S.D. act as if she were afraid of defendant.

Officer Paul Ayoob, who responded to S.D.'s call, testified that S.D. was calm until she saw the police and then she began yelling at defendant. She did not appear afraid of defendant. Ayoob tried to calm her down, but she did not cooperate. Defendant, however, was cooperative.

Dr. Anthony Damore, an obstetrician/gynecologist, testified that he examined the photographs taken by Weiland. According to Damore, the source of S.D.'s vaginal bleeding could not be determined, because there had been no vaginal exam.

## II. Discussion

Defendant contends that the trial court erred in admitting an excerpt from the information for the 1990 offenses, a notice of order to the sheriff that defendant had changed his plea, and an abstract of judgment showing that he had been convicted of forcible oral copulation and sexual battery. He asserts that the admission of this evidence violated Evidence Code section 1108[2] and violated his constitutional rights to a fair trial by jury. He also contends that the trial court abused its discretion under section 352 in admitting this evidence and that the evidence was inadmissible hearsay under section 452.5.

### A. Background

The prosecutor notified defendant that he intended to introduce certified copies of the complaint and the abstract judgment of defendant's prior sex offenses under section 1108. At the first hearing on the parties' pretrial motions, defendant sought to exclude this evidence, arguing that the trial court could not exercise its discretion under section 352 if the prosecutor did not produce live testimony about the underlying facts of these convictions. He also argued that the evidence was hearsay, and that the jury would be unable to determine whether the prior offenses showed defendant's propensity to commit the charged crime without this testimony. Following argument by the prosecutor, the trial court took the matter under submission.

The trial court conducted a second pretrial hearing at which the prosecutor provided a preliminary hearing transcript from the 1990 case involving Veronica Doe. The prosecutor stated that he had been unable to locate the victim, but he was still looking for her. He also pointed out that defendant had phoned the victim in the 1990 case after his arrest and asked whether she

---

[2] All further statutory references are to the Evidence Code.

was going to testify against him. In addition, the prosecutor had subpoenaed one of the officers from the prior case, who could describe the victim's conduct when he arrived at the scene. Defendant argued that the trial court could only conduct the section 352 analysis based on the victim's testimony.

The trial court found that the evidence was admissible under section 1108. In exercising its discretion under section 352, the trial court summarized the factors that it was required to consider. The trial court stated: "In going through the 352 weighing process, the Court finds as follows: [¶] 1. The nature of the prior offense, forcible oral copulation, is of the same class and nature as the charged offense, forcible sexual penetration and forcible sodomy; [¶] 2. The prior offenses are obviously relevant as propensity evidence. If it wasn't relevant, we would not even be in this 352 weighing process; [¶] 3. The prior offenses took place in 1989, and the offenses charged here allegedly took place in November 2003, 14 years later. While 14 years apart may appear to be a problem on its face, the fact that the defendant was convicted of the prior offenses in May of 1990 and was sentenced in June of 1990 and the sentence was 11 years in the state prison and was released from parole within four years of the current charges, the Court finds that the remoteness is not an issue; [¶] 4. The fact that the defendant pled guilty to the prior offenses and was sentenced to prison resolves the degree of certainty issue, and the jury will not be distracted by speculating whether the defendant is or was guilty of the now uncharged offenses and/or should be punished for them. We can also be ensured that the jury will not be tempted to convict the defendant simply to punish him for other offenses and their attention will not be diverted by having to make a separate determination on whether the defendant committed those other offenses. [¶] . . . [¶] That was No. 4. We'll skip to No. 6 right now. The use of this 1108 evidence will obviously have a prejudicial impact on the jury. That's the nature of 1108 evidence and also the reason the Court is going through and must go through this 352 analysis; [¶] 7. There is no burden on the defendant in defending against these uncharged crimes or offenses. That burden ended in 1990. His only burden is defending against the current charges; and [¶] 8. The People have offered a less prejudicial alternative to the outright admission of live testimony of witnesses to the prior offenses by desiring to use only the Information, the Notice of Court Order, and the Abstract of Judgment rather than live witnesses describing what took place during the 1989 offenses, and this has taken much of the inflammatory detail surrounding the other offenses. [¶] At this point in the Court's weighing process under 352, the Court finds that the probative value of 1108 evidence far outweighs any prejudicial effect caused by its admission. However, we must still deal with No. 5; that is, the factual similarity to the charged offenses. This similarity determination is for the Court to make and not the jury. [¶] Evidence Code section 1108 specifically lists the offenses which are relevant propensity evidence, including Section 288a of the Penal Code. In <u>People v.</u>

Frazier, a 2001 case, at 89 Cal.App.4th, page 30, the Court ruled, quote, 'The charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough that the charged and uncharged offenses are sex offenses as defined in Section 1108,' close quote. [¶] . . . Two of the charged offenses, Penal Code Sections 286 and 289, are also listed in 1108. . . . [¶] . . . As it stands right now, it's admissible. 352 has been complied with. If you want me to go further on the similarity, I'd be willing to do it. But it's a question of how we do it. And if you folks can't agree, then I'll pick the method, which is using that file." Following argument, the trial court took the matter under submission.

The trial court then held another hearing on pretrial motions. After reviewing the information, the transcript of the preliminary examination and the probation report in the 1990 case as well as the transcript of the preliminary examination and the police reports in the present case, the trial court found that the documentary evidence was admissible.

## B. Legal Analysis

■ In interpreting a statute, our goal is to determine the intent of the Legislature. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) Thus, we consider the words of the statute, since they provide the most reliable indicator of legislative intent. (*Ibid.*)

We begin with the statutory definition of "evidence." " 'Evidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (§ 140.) The copies of the information and the abstract of judgment from defendant's 1990 convictions are "writings," and thus fall within the statutory definition of evidence.

■ We turn then to section 1108, subdivision (a), which provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Since section 1108 does not limit the type of evidence to live testimony, it includes "writings or other things," such as the court documents in the present case.

Defendant argues that this interpretation overlooks other language in section 1108, that is, that the statute allows admission of "evidence of the defendant's *commission* of another sexual offense" (italics added), and not the fact of

conviction.[3] The issue of whether court records of a prior conviction are admissible to prove that the defendant *committed* a prior offense was considered in *People v. Duran* (2002) 97 Cal.App.4th 1448 [119 Cal.Rptr.2d 272]. In *Duran*, the court interpreted section 452.5, subdivision (b), which provides that "[a]n official record of conviction . . . is admissible pursuant to Section 1280 [the official records exception to the hearsay rule] to prove the commission . . . of a criminal offense . . . ." (97 Cal.App.4th at p. 1460, italics omitted.) Finding that this statutory language was unambiguous, the *Duran* court held that "section 452.5 states a new hearsay exception for certified official records of conviction, which may be offered to prove not only the fact of a conviction, but the commission of the underlying offense." (*Id.* at p. 1461.)

Relying on *People v. Wheeler* (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418, 841 P.2d 938], defendant claims that the Legislature never intended section 452.5 as an exception to the hearsay rule. We disagree. As the *Duran* court pointed out, the Legislature enacted section 452.5 after *Wheeler*. (*People v. Duran, supra,* 97 Cal.App.4th at p. 1459.)

Defendant next asserts that the Legislature did not place section 452.5 with other statutory hearsay exceptions and that there is nothing in the legislative history of section 452.5 showing that the Legislature intended to overrule prior case law that a criminal conviction is inadmissible to prove the underlying conduct upon which it is based. However, this court does not consider the statutory scheme or legislative history unless the statutory language "is susceptible of more than one reasonable interpretation." (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].) Since the language of section 452.5 is unambiguous, we do not look to extrinsic aids to guide our interpretation.

■ Defendant also claims that the notice requirement of section 1108 confirms the necessity of live testimony. There is no merit to this claim. Section 1108, subdivision (b) requires that the prosecution "disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered" 30 days prior to trial. "[T]he words 'include' and 'including' are ordinarily words of enlargement, and not of limitation." (*People v. Horner* (1970) 9 Cal.App.3d 23, 27 [87 Cal.Rptr. 917].) Thus, the notice requirement of section 1108 does not limit the prosecution to the disclosure of potential live testimony.

---

[3] He also relies on the legislative history of section 1108, which states: "This bill provides evidence of the defendant's commission—not conviction—of another sexual offense is admissible and may be considered for its bearing on any matter to which it is relevant in a criminal action in which the defendant is accused of a sexual offense . . . ." (Sen. Com. on Crim. Procedure, analysis of Assem. Bill No. 882 (1995–1996 Reg. Sess.) p. 5.)

Defendant contends that the jury can only make its determination as to a defendant's propensity to commit the charged offense if the prosecution produces the testimony of witnesses regarding the details of the prior conduct. He argues that here there were significant differences between the two incidents, noting that the prior incident involved forcible oral copulation and sexual battery against a stranger while the charged offenses were forcible sexual penetration and sodomy against his girlfriend. First, the trial court considered the issue of similarity in its analysis under section 352. We agree with its conclusion that both the prior and charged offenses involved forcible sexual offenses against adult women, and thus the prior offenses were probative as to defendant's propensity to commit the charged offenses. Second, had defendant wanted to emphasize that the prior offenses were dissimilar because they involved a stranger, he was free to subpoena Veronica Doe to present such evidence.

Defendant argues that the trial court abused its discretion under section 352 by admitting his prior convictions to show propensity.

A trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

In *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182], our Supreme Court outlined the factors that a trial court must consider in determining whether to admit evidence of other sex offenses under section 352. These factors include the "nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (21 Cal.4th at p. 917.)

This court reviews the admissibility of evidence of prior sex offenses under an abuse of discretion standard. (*People v. Cudjo* (1993) 6 Cal.4th 585, 609 [25 Cal.Rptr.2d 390, 863 P.2d 635].) A trial court abuses its discretion when its ruling "falls outside the bounds of reason." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226 [9 Cal.Rptr.2d 628, 831 P.2d 1210].)

We find that the trial court did not abuse its discretion in admitting evidence of defendant's prior sex offenses under sections 1108 and 352. The

prior offense of forcible oral copulation was of the same class and nature as the charged offenses of forcible sexual penetration and sodomy, and thus relevant. The prior offenses were not remote, since defendant served an 11-year sentence for them. Defendant's guilty plea resolved the issue of certainty. The jury would not be distracted or confused by the prior convictions, because defendant had been convicted of these offenses. The evidence was sufficiently similar because they were forcible sex offenses. There was no burden on defendant to defend against these prior offenses, because he had pleaded guilty in 1990. The admission of documentary evidence removed much of the potential inflammatory details of the prior offenses. Thus, we conclude that the trial court executed its duty by carefully weighing the probative value of the evidence against its prejudicial effect.[4]

Defendant's reliance on *People v. Harris* (1988) 60 Cal.App.4th 727 [70 Cal.Rptr.2d 689] is misplaced. In *Harris*, the defendant, a mental health nurse, was charged with several sexual offenses after he allegedly took advantage of two emotionally and physically vulnerable women in his care. (*Id.* at pp. 730–731.) At trial, the prosecutor introduced evidence of the defendant's prior violent criminal behavior through the testimony of two police officers. (*Id.* at p. 733.) They described finding a woman who had been severely beaten, was covered in blood, and appeared to be unconscious. (*Id.* at pp. 734–735.) The defendant, whose crotch was bloody, was found hiding nearby. (*Ibid.*) It was also stipulated that the defendant had been convicted of burglary with great bodily injury. (*Id.* at p. 735.) The reviewing court stated that the evidence was "inflammatory in the extreme," and would have allowed the jury to speculate as to the defendant's role in the crime in light of his conviction for burglary. (*Id.* at p. 738, italics omitted.) It also noted that the jury could have concluded that the defendant was never punished for the prior rape, and thus might have been inclined to punish him by convicting him of the charged offenses. (*Ibid.*) The *Harris* court further found that the remoteness of the evidence weighed heavily in favor of exclusion, since the prior offense had occurred 23 years earlier. (*Id.* at p. 739.) Though recognizing that admission of the evidence would not consume much time during trial (*ibid.*), the court concluded that evidence that the defendant was a violent sex offender had little relevance to the " 'breach of trust' sex crimes." (*Id.* at pp. 740–741.) Thus, the *Harris* court found an abuse of discretion in the admission of the evidence of the prior conviction conduct. (*Id.* at p. 741.) *Harris* is distinguishable from the present case. In contrast to *Harris*, here the factors in favor of admission predominated.

---

[4] Since the trial court properly admitted the evidence under sections 1108 and 352, there is no merit to defendant's contention that he was deprived of his right to a fair trial by jury. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 907, 913, 917.)

## III. Disposition

The judgment is affirmed.

McAdams, J., and Duffy, J., concurred.

A petition for a rehearing was denied May 9, 2006, and appellant's petition for review by the Supreme Court was denied August 10, 2006, S143820.