Filed 8/24/15  P. v. Burns CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G050300 |
|       v. | (Super. Ct. No. 14CF0035) |
| PRICE RAY BURNS, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Trenton C. Packer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Heather M. Clark and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Price Ray Burns was convicted of, inter alia, indecent exposure for showing his genitals to a young boy inside a drug store. At trial, the court allowed the prosecution to present evidence appellant had previously exposed himself to a female college student in San Diego. Appellant concedes the prior incident was admissible. However, he contends that, in terms of proving that incident, the trial court should have limited the prosecution to documentary evidence, as opposed to letting it present live testimony from the victim. We do not believe the trial court abused its discretion in that regard. Therefore, we affirm the judgment.

FACTS

On the afternoon of December 4, 2013, Cynthia B. went to a drug store in Santa Ana with her three young children to pick up a prescription. Once they were inside the store, the children ran ahead of Cynthia B. to play with a blood pressure monitor located in the pharmacy section. When Cynthia B. caught up to them, she saw appellant, then age 60, seated in that area. Appellant said "mira," Spanish for "look," to Cynthia B.'s three-year-old son. Then he lifted the pant leg of his shorts and exposed one of his testicles to the boy.

After the incident, the boy ran up to Cynthia B. and hugged her leg. Then the pharmacist called appellant's name and he grabbed his medications from the counter and started taking them immediately. When the pharmacist told appellant he had to pay for his medications first, he claimed he left his wallet out in his car. Then he ran out of the store and never returned. According to Cynthia B., appellant did not appear ill or out of breath when the incident occurred.

The next evening, the police got a call regarding a drunken man on the sidewalk not far from the drug store. When they arrived at that location, they found appellant lying on the ground. He claimed he was having chest pains and a problem with his diabetes. However, he did not seem to be having any difficulty breathing, talking or understanding the officers' questions. Because he matched the description of the drug

2

store flasher, the police asked him about that incident. Appellant admitted being at the drug store the previous day, but he denied exposing himself or stealing anything. Even though he did not appear to be ill, he was transported to the hospital for observation.

Based on the drug store incident, appellant was arrested and tried for indecent exposure, child annoyance and petty theft. During opening arguments, defense counsel admitted appellant exposed himself to Cynthia B.'s son in the drug store. However, he claimed appellant was "oblivious to the world" when the incident occurred because he was suffering from dementia and diabetes. Defense counsel asserted these ailments impaired appellant's cognitive functioning, and the evidence would show appellant's conduct in exposing himself to Cynthia B.'s son was nothing more than an accident.

In support of this theory, the defense called Rose Marie Pitt, M.D., to testify on appellant's behalf. She stated appellant's medical records showed he had a history of dementia and diabetes and was admitted to the hospital about seven hours after he exposed himself to Cynthia B.'s son. At that time, appellant's glucose level was four times above the normal range. However, appellant admitted he drank a pint of whiskey after the incident occurred, so Dr. Pitt had no way of knowing what his glucose level was at the drug store. All she could say was that appellant's behavior at the drug store was consistent with a person who was having confusion and impulse control issues brought about by a high glucose level and dementia.

To show appellant's behavior in the drug store was no accident, the prosecution called Samantha J. as a witness. She testified that in October 2012, she had an unsettling encounter with appellant at a trolley station near San Diego State University, where she was attending school. While she and appellant were riding alone in an elevator at the station, he pulled down his pants and asked her to scratch his exposed, erect penis. She refused and quickly departed the elevator when its doors opened. She also reported the incident to the police and identified appellant at the scene.

3

Asked about appellant's physical condition at the time of the incident, she testified he did not appear to be sick, sweating or short of breath, nor did he have any difficulty expressing himself.

The jury convicted appellant as charged. After finding he had served a prior prison term, the trial court sentenced him to three years in prison.

DISCUSSION

Appellant contends the trial court abused its discretion in allowing the prosecution to establish the prior incident involving Samantha J. with live testimony as opposed to documentary proof. We disagree.

During a criminal trial, evidence the defendant has committed a prior bad act is generally inadmissible to prove his conduct on a particular occasion, unless it is relevant to prove something other than his disposition to commit that act, such as motive or intent. (Evid. Code, § 1101, subds. (a), (b); *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)[1] But as our Supreme Court explained in *Falsetta*, that rule does not apply in sex crime cases. With the passage of section 1108 in 1995, the Legislature determined evidence of a defendant's prior sexual misconduct may be used as propensity evidence in sex crime cases to prove he is disposed to commit such crimes and thus guilty of the charged offense. (*Falsetta, supra*, 21 Cal.4th at pp. 911-912.)

Before admitting such evidence, however, the trial court must determine whether it is barred by section 352. (§ 1108, subd. (a).) In sex crime cases, that section gives trial courts "broad discretion to exclude disposition evidence if its prejudicial effect, including the impact that learning about defendant's other sex offenses makes on the jury, outweighs its probative value." (*Falsetta, supra*, 21 Cal.4th at p. 919.) "Rather than admit or exclude every sex offense a defendant [has committed in the past], trial judges must consider such factors as its nature, relevance, and possible remoteness, the

---

[1] All further statutory references are to the Evidence Code.

4

degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, [and] the burden on the defendant in defending against the uncharged offense[.]" (*Id*. at p. 917.)

The trial court also must consider "the availability of less prejudicial alternatives" to the outright admission of the prior sex offense and the need to exclude details about the prior that may be irrelevant or inflammatory. (*Falsetta, supra*, 21 Cal.4th at p. 917.) However, in reviewing a trial court's decision to admit evidence of prior sexual misconduct under sections 1108 and 352, we must keep in mind that the latter section is not designed to exclude evidence that is merely damaging to the defendant's case; rather, it is aimed at keeping out evidence that uniquely tends to evoke an emotional bias against the defendant based on extraneous considerations. (*People v. Bryant* (2014) 60 Cal.4th 335, 408.) The determination as to whether evidence rises to this level "is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence." (*Falsetta, supra*, 21 Cal.4th at pp. 917-918.)

In this case, the trial court carefully considered the *Falsetta* factors in assessing the admissibility of appellant's prior sex offense against Samantha J.. The court also contemplated whether, in the interests of saving time and reducing prejudice, it would be preferable to have the prosecution prove the prior with documentary evidence, as opposed to having Samantha J. testify about it in court. While defense counsel favored the former option, the prosecutor opposed it on the basis it was important for the jury to know the circumstances surrounding the prior incident. In particular, the prosecutor argued it would be helpful for the jury to know what appellant's demeanor and physical condition were at the time he committed the prior offense, since he was alleging his conduct in the present case was an accident brought about by mental impairment. The trial court agreed and allowed the prosecution to call Samantha J. as a witness at trial to testify about the time appellant exposed himself to her in San Diego.

5

Relying on *People v. Wesson* (2006) 138 Cal.App.4th 959 (*Wesson*), appellant contends the trial court abused its discretion in so doing. However, the main issue in *Wesson* was whether the trial court erred in allowing the prosecution to prove the defendant's prior sex crimes with documentary evidence rather than live testimony – the *opposite* of what happened here. (*Id*. at pp. 967-969.) In upholding the admission of the documentary evidence proffered in that case, the *Wesson* court did observe that method of proof "removed much of the potential inflammatory details of the prior offenses" (*id*. at p. 970), but it did not say it was the *only* way to prove a prior sex crime. Ultimately, it upheld evidence of the defendant's priors because they reflected his disposition to commit sex offenses, they were not remote or particularly inflammatory, they were conclusively proven, and they were sufficiently similar to the charged offense. (*Id*. at pp. 969-970.)

Likewise here, appellant's prior sex offense was probative of his propensity for sexual misconduct, it occurred just a year before the present case arose, it was not any more inflammatory than the charged offenses, and it was conclusively proven by means of conviction. Granted, the circumstances of the prior offense and the age and gender of his victim in the prior case were different than in the present case, but those differences were not such as to create an undue danger of prejudice. (Compare *People v. Harris* (1998) 60 Cal.App.4th 727 [where nurse was accused of fondling two of his patients, the trial court erred in admitting evidence implicating him in a decades-old incident in which the victim was beaten and sexually exploited during a ferocious attack].)

In fact, during his closing argument defense counsel ably exploited these differences in downplaying the significance of the prior incident. Had the circumstances of that incident not been illuminated via live testimony, defense counsel would not have been able to discuss these differences, and the jury would have been left guessing as to how the prior offense played out. Left to their own devices, the jurors may have

6

imagined the prior offense was worse than it actually was, had Samantha J. not taken the stand and explained what actually happened.

As the prosecutor mentioned at the motion hearing, the circumstances of the prior offense were also relevant in terms of rebutting appellant's defense to the present charges. Indeed, the fact appellant showed no signs of physical or mental impairment at the time he exposed himself to Samantha J. in October 2012 undermined his claim that diabetes and dementia impaired his ability to know what he was doing when he exposed himself to Cynthia B.'s young child 14 months later. In arguing otherwise, appellant points out he was not diagnosed with dementia and diabetes until 2013, after the Samantha J. incident occurred. However, Dr. Pitt testified appellant's medical records showed evidence of "old trauma to [his] brain," indicating he had dementia before he was formally diagnosed with that illness. Dr. Pitt also testified appellant had a history of hospitalization and "chronically elevated blood sugars" before the present case arose. Therefore, that he did not show any signs of these ailments in exposing himself to Samantha J. was logically relevant to whether they played a role when he subsequently exposed himself to Cynthia B.'s son.

Appellant correctly notes the prosecutor did not actually argue this point in her closing argument. Instead, she urged the jury to use the evidence of appellant's prior sex offense as proof he had a propensity for sexual misconduct and exposed himself to Cynthia B.'s son for sexual purposes, not because of accident or impairment. But that's precisely how the Legislature intended evidence of the defendant's prior sex crimes would be used at trial. (See *Falsetta, supra*, 21 Cal.4th at pp. 911-912.) Although the prosecutor could have made the same argument had proof of appellant's prior sex offense been limited to documentary evidence, we do not believe the trial court abused its discretion in allowing the prosecutor to prove the prior with live testimony. Moreover, due to the fact the prosecutor could have made the very same argument had the method of proof been so limited, it is not reasonably probable appellant would have obtained a more

7

favorable result had that been the case.  Therefore, there is no reason to disturb the jury's verdict.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

DISPOSITION

The judgment is affirmed.



BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.