Filed 1/10/24  P. v. Vanvoorhis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br>WARREN A. VANVOORHIS,<br><br>  Defendant and Appellant. | D082210<br><br><br>(San Bernardino Super. Ct.<br>No. FVI19003316) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Shannon L. Faherty, Judge.  Conviction affirmed, sentence reversed; remanded for resentencing.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Kathryn A. Kirschbaum and Sahar Karimi, Deputy Attorneys General for Plaintiff and Respondent.

Over a period of more than four decades, 79-year-old defendant Warren Vanvoorhis has been convicted of multiple sex offenses and has served many years in prison for those and related crimes. Most recently, Vanvoorhis was convicted of assault with intent to commit rape based on an incident in which he attacked a woman after offering her a ride to buy drugs. The court sentenced him to a three-strike term of 25 years to life, plus an additional determinate term of 15 years for three serious felony enhancements.

On appeal, Vanvoorhis contends the trial court abused its discretion under Evidence Code section 352 by permitting the People to introduce evidence from three of his prior sex offense cases. He asserts that the evidence of those convictions was more prejudicial than probative and should have been excluded. Vanvoorhis also argues that the trial court abused its discretion in declining to dismiss some or all of the three prior serious offense enhancements under the version of Penal Code section 1385 that was in effect at the time of his sentencing, or alternatively that his defense lawyer's failure to adequately preserve this claim amounted to ineffective assistance of counsel.

We reject Vanvoorhis's challenge to the court's evidentiary ruling regarding his uncharged sex crimes. But we agree that his counsel's failure to alert the court to the new standards created by the amendments to section 1385 constituted deficient performance. We further conclude there is a reasonable probability that Vanvoorhis would have obtained a more favorable sentencing outcome had counsel raised the issue with the trial court. Accordingly, we affirm Vanvoorhis's conviction for assault with intent to commit rape, but reverse his sentence and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2019, Diana Z. had been waiting at a bus stop in the city of Adelanto when Vanvoorhis drove up and asked if she needed a ride. Diana initially did not accept the offer, but she asked if he knew where she could obtain methamphetamine. Vanvoorhis told Diana that he knew where to get drugs and offered to drive her there. Diana accepted and got into his car.

Vanvoorhis drove Diana to a dirt road that was littered with piles of old clothes and books. Claiming that a "drug house" was nearby, Vanvoorhis got out of the car. Diana followed him. As Diana bent down to examine a pile of discarded items, Vanvoorhis walked behind her and picked up a knife. Vanvoorhis pushed Diana down, held her right arm, and put the knife to her throat. Vanvoorhis began kissing Diana's ear, cheek, and neck while also saying that it had been a long time since he had had sex and telling her that he really wanted to "have sex now." Vanvoorhis lost his balance and fell on top of Diana. She tried to take the knife away from him, and they rolled around, wrestling over the knife. Eventually Diana managed to grab the knife away from Vanvoorhis and throw it into a bush.

Vanvoorhis was still on top of Diana, and he continued to hold her down and kiss her. Because she was afraid of being killed, she attempted to "convince" Vanvoorhis to go back toward the road, telling him, "We can have sex for $100 but we can't do it here. We have to go to a room." She did not want to have sex with Vanvoorhis, and was instead trying to create a chance to run.

Vanvoorhis finally agreed they would return to his car. When they got into the car, Diana told him she did not want to have sex with him. Vanvoorhis got upset; he said he wanted to have sex with her in the car and did not want to go to a motel. Diana saw Vanvoorhis take his eyes off of her

3

for a moment as he reached "to the side of his seat," and she took the opportunity to escape the car and run.

As Diana ran into the desert, she turned back at one point and saw Vanvoorhis "trying to drive his car" to where she was. She dropped her purse but continued to run. At some point she slowed down to catch her breath and saw four houses in the distance. She began running again, toward the houses. She went to a house where she heard noises coming from inside. She knocked on the door and when a woman answered, Diana said, "I'm sorry, but can you please, please call the cops. I really need the cops." Diana waited outside for an officer to arrive.

A sheriff's deputy responded to the house and observed Diana sweaty, crying, and shaking. Diana was cradling her left arm and complaining of being in pain. She had abrasions on her wrists and on the left side of her neck. Diana took the deputy to the location of the incident, where the deputy observed an open dirt field littered with piles of cloths, an overturned vehicle, and shrubbery. Together, Diana and the deputy located a silver metal butter knife near a bush, which Diana identified as the one Vanvoorhis had used to attack her. Later, Diana positively identified Vanvoorhis during a photographic line-up.

The deputy interviewed Vanvoorhis, who changed his story multiple times. Initially, Vanvoorhis said he did not recognize Diana when shown her photograph. Upon further questioning, he admitted that he had met Diana, but claimed it was at a Wal-Mart parking lot when she asked him for change and that was the extent of their interaction. Eventually he acknowledged having given Diana a ride to a dirt field after she inquired about obtaining drugs. When asked about the assault, Vanvoorhis repeatedly said that he did not remember anything about an assault. At the end of the interview, he

4

asked another deputy to do a "favor" for him, which was "to please apologize to her for what [he] did."

Vanvoorhis was charged with a single count of assault with intent to commit rape (Pen. Code, § 220, subd. (a)(1), count 1), as well as a single count of attempted forcible rape (*Id.,* §§ 664, 261, subd. (a)(2), count 2). The People alleged that Vanvoorhis had suffered three prior strike convictions (*Id.,* §§ 1170.12, subd. (a) & 667, subds. (b)–(i)), and that those same convictions also constituted serious felonies (*Id.,* § 667, subd. (a)(1)).

At trial, Diana testified in a manner consistent with her initial statements to law enforcement. The People also introduced evidence that at the time of his most recent offense, Vanvoorhis was a registered sex offender who had been convicted of multiple prior sexual offenses going back to the 1970s. He was on parole at the time of this incident and was wearing a Global Positioning System (GPS) monitor. The data from the GPS monitor indicated that Vanvoorhis drove to the bus stop where Diana indicated the two had met, then drove on dirt roads nearby, and finally stopped for a period of time at the location where Diana had indicated that the attack took place.

Vanvoorhis testified in his own defense, stating that he pulled over to the bus stop after Diana waved him over. She asked him for drugs, and while he did not know where to get them, he agreed to give her a ride. According to Vanvoorhis, they drove to the desert location where Diana met up with her drug dealer and began "snorting" drugs. Diana brought up the idea of exchanging sex for money, but he could not afford what she requested. Vanvoorhis got upset with Diana and told her to get out of his car. After he checked on her one time when he drove up "on the top of the hill," he never saw her again. Vanvoorhis denied kissing or licking Diana, demanding sex

5

from her, holding a knife to her throat, having any physical altercation with her, or chasing her with his car.

At the conclusion of trial, the jury convicted Vanvoorhis on count 1, and therefore did not make a finding as to the lesser included offense alleged in count 2.

The trial court held a bifurcated bench trial regarding the prior conviction allegations, making true findings as to each. Defense counsel moved unsuccessfully to have the court strike the prior strikes under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), or, alternatively, to strike the punishment for the serious felony enhancements pursuant to Penal Code section 1385 based on Vanvoorhis's age and declining health. The court ultimately sentenced Vanvoorhis to a determinate term of 15 years, based on the three serious felony prior conviction findings, plus an indeterminate term of 25 years to life on count 1.

## DISCUSSION

A.  *The trial court did not abuse its discretion in admitting evidence of Vanvoorhis's prior sex offense convictions.*

1.  *Additional background*

Prior to trial, the prosecutor sought a ruling to admit evidence that Vanvoorhis had been convicted of various offenses related to criminal sexual conduct that occurred in 1975, 1979, and 1990 under Evidence Code section 1108.[1] Vanvoorhis's prior convictions included unlawful sexual intercourse, false imprisonment, forcible rape, forcible oral copulation, rape by foreign object, assault with intent to commit rape, and assault with intent to commit murder. Specifically, the People sought to have evidence of the prior offenses

---

[1]  Further statutory references in this section of the opinion are to the Evidence Code unless otherwise indicated.

6

admitted "by way of certified prior conviction packets for those offenses" and the calling of "a deputy [district attorney] from [the prosecutor's office] to testify to explain these documents," rather than through the testimony of victims or witnesses.

Defense counsel objected to the admission of evidence regarding the prior uncharged acts on the ground they were far more prejudicial than probative under section 352. Counsel specifically objected "to anything beyond" the mere facts of the convictions and the conviction dates, and argued that no evidence regarding "the sentence," or "where did he go," and "what were his [parole] terms," should be admitted, stating, "I don't think that the jury gets to know all of that."

The trial court ruled that the prior convictions were admissible under section 1108 and further concluded that section 352 did not render the convictions inadmissible because they were more probative than prejudicial. The court noted that the record of Vanvoorhis's prior sex offense convictions demonstrated that many of his offenses took place within a year of his release from prison, and concluded that the "ongoing pattern of conduct . . . is . . . highly probative." It further determined that the evidence was not likely to confuse the jury, nor would it require an undue consumption of time. The court expressed concern that redacting some portion of the abstracts of judgment would render the certification of the authenticity of those documents invalid, and asked whether defense counsel would stipulate to the fact of the convictions. Defense counsel did not agree to the court's proposed stipulation.

The trial court indicated that in its analysis, permitting the jury to view the conviction packets would not cause undue prejudice because "[a]ny extra prejudice that would exist [as a result of] the jury knowing [the length

7

of Vanvoorhis's prior sentences]" was not substantial beyond the prejudice that would already arise from informing the jury that he had been convicted of the prior sex offenses. In the court's view, the information regarding his sentences would not cause *undue* prejudice and would not "change[ ] the balancing in any way." It also reasoned that, with the exception of the 1971 conviction for statutory rape, the other prior convictions were crimes of moral turpitude and would be separately admissible as impeachment evidence if Vanvoorhis chose to testify, which he ultimately did.

At trial, a deputy district attorney testified regarding Vanvoorhis's prior criminal history. He described the types of documents contained in a "certified prior packet[ ]," such as informations or complaints, minute orders, and abstracts of judgment. The prosecutor then led the witness through Vanvoorhis's prior conviction packets regarding his convictions in 1976, 1980, and 1990. The witness identified for the jury the offenses for which Vanvoorhis had been convicted based on the abstracts of judgment. The witness did not testify as to the sentences imposed in those cases, or where jurors might find information regarding Vanvoorhis's sentences.

2.      *Analysis*

Vanvoorhis argues that the trial court abused its discretion in admitting the section 1108 prior sex crimes evidence under section 352. He asserts that the section 1108 evidence was "not particularly probative" because his other offenses were not similar to the current charged conduct and were "incredibly remote." The minimal probative value, he contends, did not outweigh the "great" prejudicial effect of the evidence.

"Section 1101 of the Evidence Code limits the admissibility of so-called 'propensity' or 'disposition' evidence offered to prove a person's conduct on a particular occasion." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790,

8

822–823.)  But "when a defendant is accused of a sex offense, . . . section 1108 permits the court to admit evidence of the defendant's commission of other sex offenses, thus allowing the jury to learn of the defendant's possible disposition to commit sex crimes." (*People v. Cordova* (2015) 62 Cal.4th 104, 132 (*Cordova*).)  A court has discretion to exclude the prior sex crimes evidence under section 352 if it determines that it is unduly prejudicial. (*Cordova*, at p. 132.)  "Prejudicial" for purposes of section 352 is " ' " 'not synonymous with "damaging." ' " ' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 29.)  Rather, the " 'prejudice' which section 352 seeks to avoid is that which ' " 'uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.' " ' " (*Ibid*.)

Section 1108 evidence "is *presumed* admissible and is to be excluded only if its prejudicial effect substantially outweighs its probative value in showing the defendant's disposition to commit the charged sex offense or other relevant matters." (*Cordova*, *supra*, 62 Cal.4th at p. 132, italics added.) As with " 'any ruling under section 352, the trial court's ruling admitting evidence under section 1108 is subject to review for abuse of discretion.' " (*People v. Avila* (2014) 59 Cal.4th 496, 515.)

Contrary to Vanvoorhis's contention, the evidence of his past sex crimes fairly demonstrated his propensity to commit the charged sex crimes.  Section 1108 expressly permits the admission of evidence of a defendant's uncharged "sexual offense"—which is defined in the statute to include a lengthy list of enumerated statutorily defined sex crimes as well as other specified conduct—as probative of the defendant's propensity to commit any other sexual offense, regardless of the degree of similarity between the charged offense(s) and the uncharged conduct.  (See § 1108, subd. (d)(1)(A)–(F).) "In enacting Evidence Code section 1108, the Legislature decided evidence of

9

uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101." (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405; see *People v. Frazier* (2001) 89 Cal.App.4th 30, 40–41 [there is no requirement that the charged and uncharged crimes be sufficiently similar such "that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose"].) Instead, "[i]t is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*Frazier*, at p. 41.) Thus, even where there may be factual dissimilarities between the charged and uncharged conduct, "[a]ny dissimilarities in the alleged incidents relate only to the weight of the evidence, not its admissibility." (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 967; see *Cordova, supra*, 62 Cal.4th at p. 133 [dissimilarity alone does not compel exclusion of evidence of prior sexual offenses].) Thus, the trial court appropriately determined that the uncharged prior sex crimes evidence was relevant to prove Vanvoorhis's propensity to commit the charged sex offenses.[2]

---

[2]  Vanvoorhis notes that the conviction packets the trial court admitted in evidence, and the deputy district attorney's testimony about those conviction packets, also contained references to his convictions for some non-sex offenses—two counts of false imprisonment, one count of vehicle theft, and one count of assault with intent to murder—all of which were committed in connection with the sex offenses of which he was also convicted. He asserts that non-sex offenses are necessarily dissimilar to the charged sex offenses, and that his convictions for those offenses lacked sufficient probative value and could only have been unduly prejudicial and thus should have been excluded under section 352. This argument has been forfeited. At trial, Vanvoorhis's attorney made no distinction between the sex offense convictions and the non-sex offense convictions, and he did not object to the inclusion of references to Vanvoorhis's convictions for these non-sex crimes, either on section 1108 or section 352 grounds. The failure to make a timely

10

Vanvoorhis also contends that his prior offenses lacked sufficient probative value when weighed against their prejudicial effect because they were too far removed in time from the charged conduct. Although remoteness of prior conduct "is a relevant factor for the court to consider in exercising its discretion," a gap in time "does not compel exclusion of the evidence." (*Cordova*, *supra*, 62 Cal.4th at p. 133.) "Numerous cases have upheld admission pursuant to Evidence Code section 1108 of prior sexual crimes that occurred decades before the current offenses." (*People v. Robertson* (2012) 208 Cal.App.4th 965, 992; see *People v. Branch* (2001) 91 Cal.App.4th 274, 284–285 [30-year-old sex offense admitted]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 [20 year separation was "not too remote" under section 1108].)

Moreover, in analyzing whether a defendant's prior criminal conduct was "remote" for purposes of a section 352 analysis, a court may "consider whether the defendant 'was incarcerated a substantial part of the intervening time and thus had little or no opportunity to commit' additional crimes." (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390; accord *People v. Steele* (2002) 27 Cal.4th 1230, 1245 [defendant's prior crime was not "remote" under section 352 where defendant spent time in prison during intervening period].) As the trial court noted, Vanvoorhis's record of offenses indicated that his prior offenses were only "remote" in time due to his terms of imprisonment, which limited his opportunity to reoffend. It further demonstrates that each time he was released from prison, he reoffended within approximately a year. Under such circumstances, Vanvoorhis's prior sex crimes cannot be

---

and specific evidentiary objection in the trial court results in the forfeiture of that contention on appeal. (See, e.g., *People v. Partida* (2005) 37 Cal.4th 428, 434.)

11

considered too remote to be probative of his predisposition to commit the charged conduct.

In addition, we do not accept Vanvoorhis's suggestion that the evidence of his prior sex crimes was unduly prejudicial. He contends that the "evidence supporting the uncharged acts was stronger than the evidence supporting the charged acts," and complains that the bootstrapping of a strong case to a relatively weaker case should have weighed against admitting the prior crimes evidence. But unlike the many cases where live testimony from prior victims is admitted to prove the uncharged conduct, the evidence here involved only documentary evidence related to his prior convictions. Although it is true that the fact of his convictions rendered this evidence "strong" in the sense that it is clear prior juries convicted him of sex offenses, the Legislature obviously intended for such evidence to be admissible in cases charging a sex offense.

We also disagree with the suggestion that the evidence in this case was weak. Although the prosecution's case rested on the testimony of a single individual—one who, as Vanvoorhis notes, had admitted to seeking drugs on the day of the assault— her story about what happened was consistent over time. And while the victim did have difficulty remembering details such as street names or the direction of locations relative to one another, she had no trouble recalling the details of the assault. The GPS evidence from Vanvoorhis's monitor was consistent with the victim's story, and given that Vanvoorhis was a stranger to her, she had no reason to summon police (and in so doing call attention to her own drug habits) to fabricate a story about what had occurred.

12

Further, the fact that the prior sex crimes evidence comprised only documents and extremely limited testimony about the prior convictions also undermines Vanvoorhis's contention that the evidence was more inflammatory than probative of the charged conduct. Vanvoorhis argues his prior convictions included forcible rapes and forcible oral copulation, which are serious offenses that would tend to inflame the jury. Although Vanvoorhis's prior crimes were serious, the fact that the jury was presented with what amounted to sanitized documentary evidence—offering little more than confirmation of the convictions while omitting any provocative details of the crimes themselves—reduced the potentially inflammatory effect of the evidence. (See *People v. Wesson* (2006) 138 Cal.App.4th 959, 970 ["The admission of documentary evidence removed much of the potential inflammatory details of the prior offenses."].)

Finally, we reject Vanvoorhis's contention that the evidence of the uncharged prior crimes convictions "almost certainly distracted the jurors" because they would have been "aware" that he was "somehow released early and was therefore not fully punished for his crimes." There is nothing in the records that demonstrates that Vanvoorhis was not "fully" punished for his offenses. Nor is there any indication that the jurors were, in fact, aware Vanvoorhis was released from prison before serving the full terms to which he was sentenced, presumably as a result of credits he earned. Notably, the deputy district attorney's testimony about the prior convictions omitted any discussion of the sentences imposed on Vanvoorhis for those crimes, and so the only references to his prior sentences would have been in the abstracts of judgments for those cases that were included in the conviction packets.[3]

---

[3] In order for the jury to have had any knowledge of Vanvoorhis's sentences, jurors would have had to locate the abstracts of judgment in the

13

This evidence demonstrated not only that Vanvoorhis engaged in the prior criminal sexual conduct, but that he was already convicted of *and* punished for those acts. Given this, we perceive virtually no risk the jury would conclude that Vanvoorhis did not commit the current charged conduct, but would nevertheless convict him in this case to ensure that he suffered adequate punishment for his prior acts. (See *People v. Foster* (2010) 50 Cal.4th 1301, 1332 ["We perceive minimal if any risk that the jury would conclude he was not the perpetrator of the charged crimes, but would convict him based upon the view that 17 years in prison for his prior crimes was inadequate punishment."]; see also *Cordova, supra,* 62 Cal.4th at p. 133 [because the defendant had already been convicted of the uncharged sex offenses, "the jury would not be tempted to convict [him] of the charged crime to punish him for the other ones"].)

We thus conclude that the trial court appropriately exercised its discretion to admit the uncharged sex crimes evidence by carefully weighing the probative value of the evidence against its prejudicial effect.[4]

---

lengthy conviction packets (presuming they would be able to identify the documents as such), and they would then have had to decode the various shorthand references used in such documents in order to try decipher what the sentence terms were. The lack of testimony about Vanvoorhis's sentences, combined with the absence of any explanation to the jury regarding how to identify and interpret an abstract of judgment, makes it doubtful jurors would have appreciated that Vanvoorhis was released prior to serving the full length of the sentences as imposed.

[4] Because we reject Vanvoorhis's contention that the trial court abused its discretion in admitting evidence of his prior sex offenses under section 1108, we also reject his assertion that the trial court's evidentiary ruling violated his due process rights. (See *People v. Thompson* (2016) 1 Cal.5th 1043, 1116 [the routine application of state evidentiary law does not, without more, implicate a defendant's constitutional rights].)

B.    *Remand is necessary for the court to apply the correct standard in deciding whether to dismiss the prior serious felony enhancements.*

Vanvoorhis contends the trial court abused its discretion in declining to dismiss one or more of his three prior serious felony enhancements under Penal Code section 1385, subdivision (c)(2)(B) and (c)(2)(H).[5]  He argues that the current version of section 1385, which was in effect at the time of sentencing in his case, requires dismissal of his enhancements "in the interest of justice" unless the court finds that dismissing the enhancements "would result in physical injury or other serious danger to others."  According to Vanvoorhis, by imposing all three five-year serious felony enhancements, the trial court implicitly found that the additional 15 years of enhancement terms was necessary to prevent physical or other serious injury to others.  Such a determination, Vanvoorhis asserts, was "absurd, arbitrary, irrational, and without factual support," and therefore constituted an abuse of discretion, in light of the fact that at the time of sentencing he was "a disabled 80-year-old-man who was [already] sentenced to serve 25 years to life in prison."

1.    *Additional procedural background*

After a bifurcated bench trial, the trial court found true the enhancement allegations that Vanvoorhis had suffered three prior strike convictions (§§ 1170.12, subd. (a), 667, subds. (b)–(i)), and further found that the same convictions constituted serious felonies under section 667, subdivision (a)(1).

At sentencing on June 10, 2022, defense counsel requested that the court "not impose a three-strike sentence [under *Romero, supra,* 13 Cal.4th

---

[5]    Further statutory references in this section of the opinion are to the Penal Code unless otherwise indicated.

497] and/or use its own discretion and strike the five-year enhancements" on the ground that those enhancements involve "dual use of the exact same conviction." Counsel noted that Vanvoorhis is "a severely disabled" individual who "missed many, many dates for appearances due to his ill health." Counsel also raised the fact that even under the sentence proposed in the probation report, which was a non-three-strikes sentence proposed in error, Vanvoorhis's age and poor health meant that the proposed sentence would "remain[ ] a significant sentence likely to result in him dying in prison."[6]

The trial court agreed with the prosecutor that the probation report failed to acknowledge the court's true findings on the three prior strike convictions, rendering the proposed sentence "not informed." The court further agreed with the prosecutor that this case "is exactly what the three strikes law was intended for," noting that Vanvoorhis "is a serial rapist." The court was "not persuaded in any way by Mr. Vanvoorhis'[s] currently ailing health." The court stated that it would "adopt the circumstances in aggravation from the probation report," and would also "adopt the probation report in that there are *no circumstances in mitigation.*" (Italics added.)

Based on this, the court rejected out of hand the 21-year determinate sentence recommended in the probation report, and instead imposed the three-strikes sentence of 25 years to life. In addition, and without further elucidation of its reasoning, the court imposed three consecutive five-year terms for the prior serious felony convictions, for a total determinate term of 15 years and an indeterminate term of 25 years to life.

---

[6] The probation report recommended a total determinate term of 21 years, consisting of a single six-year term on count 1, plus three five-year prior serious felony enhancements.

16

2.  *Analysis*

Effective January 1, 2022, section 1385 provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) This statutory provision further states that "[i]n exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

The mitigating circumstances identified in the subparagraphs to subdivision (c)(2) of section 1385 include two factors that Vanvoorhis contends are applicable in his case: (1) "[t]he enhancement is based on a prior conviction that is over five years old" (§ 1385, subd. (c)(2)(H)) (the remote prior conviction factor), and (2) where "[m]ultiple enhancements are alleged in a single case," "all enhancements beyond a single enhancement shall be dismissed" (*Id.*, subd. (c)(2)(B)) (the multiple enhancements factor).

In imposing sentence on June 10, 2022—i.e. a date more than six months after section 1385's amendments went into effect—the trial court made no mention of the factors that a trial court must consider when deciding whether it would be in the interest of justice to strike enhancements from a defendant's sentence. (See § 1385, subd. (c); see also *People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Vanvoorhis contends that the trial court abused its

17

discretion in failing to "afford the mitigating factors 'great weight,' " and instead ruling "that there were 'no mitigating factors' " to be considered. And if the court's statements are construed as an implicit determination that dismissing the enhancement would endanger public safety, Vanvoorhis argues that such a conclusion would amount to an abuse of discretion given that his three-strikes 25-years-to-life sentence already effectively and sufficiently protects the public, in light of his advanced age and disability.

The People point out that Vanvoorhis did not advise the trial court of his concern that it failed to properly apply the requirements of newly-amended section 1385, subdivision (c), rendering his appellate challenge forfeited. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 [a defendant may not raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the defendant did not object to the sentence at trial].) Vanvoorhis acknowledges that his trial counsel did not object to the court's failure to consider the statutorily enumerated mitigating factors in section 1385, subdivision (c). But he argues in the alternative that if his claim was forfeited by his attorney's failure to object on these grounds, that failure constituted ineffective assistance of counsel.

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845; see *Strickland v. Washington* (1984) 466 U.S. 668, 687–696.) "On direct appeal, a [judgment] will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no

18

rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  Even so, "deference to counsel's performance is not the same as abdication" and it " 'must never be used to insulate counsel's performance from meaningful scrutiny and thereby automatically validate challenged acts or omissions.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 675.)  With respect to demonstrating prejudice as a result of counsel's deficient performance, " '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 762, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

Vanvoorhis maintains there is no satisfactory explanation why trial counsel did not seek to have some or all of his enhancements dismissed in light of the presence of at least two of the mitigating factors set out section 1385, subdivision (c)(2).  We agree.  We can conceive of no reasonable tactical purpose for counsel's failure to point out that under section 1385, subdivision (c), the court needed to consider whether the two mitigating factors that existed in this case—i.e., the remote prior conviction factor and the multiple enhancements factor—weighed in favor of dismissing one or more of the enhancements, or whether doing so would endanger public safety or would further the interest of justice.

We further conclude there is at least a reasonable probability that, but for trial counsel's deficient performance, Vanvoorhis would have achieved a more favorable result.  The trial court's statement that there were *no* circumstances in mitigation appears to reflect a misunderstanding of the required analysis under the amended section 1385, which provides at least *two* mitigating circumstances relevant to the court's discretionary sentencing

19

decisions. Had counsel raised the issue with the court, there is a reasonable likelihood it might have determined that Vanvoorhis's 25-years-to-life sentence was sufficiently effective to ensure that Vanvoorhis would not be released from prison before the end of his life, given his age and health status, and that the additional enhancement terms could be dismissed in these circumstances because doing so would not endanger public safety. Because the court did not consider the legislative imperative set out in subdivision (c) of section 1385, we cannot say with full confidence that it would have imposed the same sentence had the amended sentencing scheme in Penal Code section 1385 been brought to the court's attention, particularly in the context of Vanvoorhis's three-strikes sentence, his advanced age and questionable health status.

We therefore reverse Vanvoorhis's sentence and remand for resentencing so that the trial court can reconsider whether it was necessary to impose all three serious felony enhancements in light of the current version of section 1385. In resentencing Vanvoorhis, the trial court shall do what the Legislature has directed by "dismiss[ing] an enhancement if it is in the furtherance of justice to do so." (*Id.*, subd. (c)(1).) In exercising its discretion under the statute, the court shall "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances [in section 1385, subdivision (c)(2)] are present" unless it "finds that dismissal of the enhancement would endanger public safety" (*Id.*, subd. (c)(2)).[7]

---

[7]  We do not intend to comment as to whether dismissal of one or more of the enhancements would or would not endanger public safety, as that term is defined in section 1385, subdivision (c)(2). Our conclusion with respect to Vanvoorhis's ineffective assistance of counsel claim is based solely on the fact that *we* cannot ascertain with sufficient certainty whether the trial court

## DISPOSITION

The sentence is vacated, and the matter is remanded to the trial court for resentencing.  The judgment is affirmed in all other respects.


DATO, Acting P. J.

WE CONCUR:



DO, J.



BUCHANAN, J.

---

would have found that dismissing one or more of the enhancements would endanger public safety, in light of the length of Vanvoorhis's indeterminate sentence, along with his advanced age and apparent poor health.

21