Filed 6/17/24  P. v. Townsend CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B327087 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA100011) |
| v. | |
| DEVAUGHN CLIFFORD TOWNSEND, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Scott T. Millington, Judge.  Affirmed.

Caneel C. Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Devaughn Clifford Townsend was found guilty of forcible rape and domestic violence and was sentenced to six years in prison. He contends the trial court committed evidentiary error, instructional error and sentencing error.

We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The victim in this case, M.J., first met defendant in May 2018 and quickly fell into a romantic relationship with him. Defendant was charming at first but within a few days of their meeting, he began showing a jealous, controlling and aggressive side to his personality.

On June 8, 2018, defendant picked up M.J. after she got off work to celebrate her birthday. They made a few stops, including at a liquor store, a restaurant and defendant's cousin's apartment. They drank alcohol and got four ecstasy pills from defendant's cousin.

On the drive back to M.J.'s apartment, defendant was angry and yelling at M.J., accusing her of being flirtatious and wanting to sleep with his cousin. Defendant called her a "stupid bitch," repeatedly told her to "shut the fuck up" and slapped her face. He was driving fast and aggressively. At some point, when they stopped at an intersection next to a truck with two men in it, defendant yelled out the window to them, asking if they wanted M.J., telling them she was "for sale."

Once they got back to M.J.'s apartment, M.J. felt she had no choice but to let defendant come inside. She was scared of his behavior but hoped she could settle him down. They talked for awhile to no avail. Defendant told M.J. that his plan for that night had been to get her drugged and have her gang-raped by

the men at his cousin's apartment because he was mad at her, believing she had been saying bad things about him. Sometime close to 2:00 a.m., M.J. thought defendant had fallen asleep, so she went to a nearby store to buy cigarettes.

Defendant repeatedly called M.J. on her phone while she was out buying cigarettes. When she returned to her apartment, defendant was angry and resumed yelling at her and calling her names. He picked up her small dog, held it out over the balcony and threatened to drop it. M.J. grabbed her dog away from defendant and locked it in the bathroom to protect it. Defendant lit a cigarette and threatened to burn her repeatedly. M.J. said he did not touch her with it, but some portion of the cigarette eventually fell on her chest and burned her.

Defendant forcefully "headbutted" M.J. causing her to fall to the floor and hit her head. Defendant ordered M.J. to get up and get on the bed. She briefly refused but was scared of getting hit again so she sat on the edge of the bed. He hit her in the throat causing her to lose her breath. When M.J. would not lie down, defendant hit her in the throat again. M.J. told defendant to stop and said no several times. She tried to keep her knees together but defendant forced her legs apart and raped her, all the while yelling at her and telling her to "shut the fuck up" and learn how to listen to him.

After defendant left her apartment, M.J. called a friend and had him drive her to her father's home. After reporting the rape to police later that morning, she was taken to the hospital and a rape examination was performed.

Registered nurse Leanne Heiland testified about the rape examination she performed on M.J. and explained the various physical injuries she documented, including to M.J.'s face, back of

3

her head, chin, collarbone, right arm and leg, and her back. Ms. Heiland explained that she did not see injuries to M.J.'s vagina, but that in her experience about 50 percent of individuals examined after a rape do not have visible injuries.

The officer who spoke with M.J. on the day she reported the rape testified that she was upset and crying and had visible bruising on her face.

Photographs of M.J.'s injuries were shown to the jury and admitted into evidence.

The parties stipulated that DNA testing confirmed the presence of defendant's semen in samples collected during M.J.'s rape examination.

Defendant exercised his right not to testify. He presented the testimony of his longtime friend, Eric Gooden. Mr. Gooden said that M.J. told him sometime in May 2018 that she would "fuck [defendant] up" if he ever left her. She also told him one day when she was looking for defendant that she would sleep with him if he would tell her where defendant was. Mr. Gooden said he had seen M.J. acting angry and belligerent when she drank alcohol.

Defendant also elicited testimony from Detective Nancy Ladner who said she had difficulty scheduling interviews with M.J. and that on one of the days they met, M.J. appeared to be intoxicated.

The jury found defendant guilty of forcible rape (Pen. Code, § 261, subd. (a)(2); count 1) and injuring a girlfriend after a prior domestic violence conviction (§ 273.5, subd. (a); count 2).

In a bifurcated bench proceeding, the court received evidence regarding the prior strike allegation and aggravating factors. The court found the prosecution failed to prove

4

defendant's out-of-state conviction for battery with the use of a deadly weapon qualified as a strike under California law. The court found true six of the seven alleged aggravating factors, including that defendant took advantage of a position of a trust with the victim, defendant had engaged in violent conduct that indicated a serious danger to society, defendant's prior convictions were numerous or of increasing seriousness, defendant had served a prior term in prison or county jail, defendant was on probation at the time the current offenses were committed, and defendant's prior performance on probation was unsatisfactory. (Cal. Rules of Court, rule 4.421(a)(11), (b)(1)-(5).) The court also found, for purposes of count 2, that defendant had suffered a prior conviction for domestic violence in May 2017. The court then continued the matter for sentencing, acknowledging the recent amendments to Penal Code section 1170 and allowing the parties to submit supplemental sentencing briefs.

The court sentenced defendant to a midterm of six years on count 1, plus a concurrent four-year midterm on count 2. The court awarded defendant 985 days of presentence custody credits (857 actual, 128 conduct) and issued a protective order in favor of M.J.

This appeal followed.

## DISCUSSION

### 1. The Admission of Certified Records of Prior Domestic Violence Conviction (Exhibit 28)

Evidence Code section 1109, subdivision (a)(1) provides in relevant part that "evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

(*Ibid.*)  As noted in *People v. Merchant* (2019) 40 Cal.App.5th 1179, 1192, the "statute reflects the Legislature's determination that in domestic violence cases, similar prior offenses are uniquely probative of a defendant's guilt on a later occasion."

The prosecutor here moved to introduce the certified records of defendant's prior domestic violence conviction from May 2017 as propensity evidence pursuant to Penal Code section 1109.  In that prior case (case No. BA452173), defendant pled no contest to a violation of section 273.5 regarding a former girlfriend (D.R.) and was placed on five years of probation.  The certified records, marked as exhibit 28, consisted of 33 pages of minute orders.

The prosecutor requested an order allowing D.R. to testify and also allowing the admission of the certified records.  D.R. had been served with a subpoena, but the prosecutor asked for an order allowing the admission of the records alone in the event D.R. failed to appear.  Defense counsel objected, saying the records of conviction should not be admitted if D.R. did not testify.  At no point did defense counsel argue for any portion of the certified records to be sanitized or redacted.

The trial court, citing *People v. Wesson* (2006) 138 Cal.App.4th 959, ruled the prosecution could present evidence of the prior conviction through the testimony of D.R. and also by offering the certified records of the prior conviction.

D.R. did not testify at trial.  At the conclusion of its case-in-chief, the prosecution moved exhibit 28 in its entirety into evidence.  At sidebar, the court asked defense counsel if there was any objection to the records being admitted other than what had been previously argued.  Defense counsel said no.

Defendant concedes the admissibility of the fact of his prior domestic violence conviction.  But he says the admission of all 33 pages of unredacted minute orders related to that conviction was prejudicial error.  Defendant contends the court "ran far afoul" of the requirements of Evidence Code section 352 by failing to redact the irrelevant and inflammatory portions of the minute orders.  He says the error denied him his right to due process and a fair trial.

This contention has been forfeited.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 670 [a defendant's failure to object to content of records or ask the trial court to redact them, forfeits the claimed evidentiary error on appeal].)  Despite ample opportunity to do so, defendant never asked the court to sanitize or redact exhibit 28.  The court was never asked to conduct an analysis of any portion of exhibit 28 under Evidence Code section 352 and to redact those portions found to be more prejudicial than probative.  The issue cannot be raised for the first time on appeal.  (*People v. Partida* (2005) 37 Cal.4th 428, 435 (*Partida*) ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct."].)  We also reject defendant's brief, conclusory argument in his reply brief that if we find forfeiture, we should find his trial counsel ineffective.  (*People v. Johnson* (2016) 62 Cal.4th 600, 653 [claims of ineffective assistance of counsel generally not appropriate for resolution on direct appeal].)

In any event, even if we were to assume for the sake of argument that the trial court committed error in not sua sponte redacting the certified records under Evidence Code section 352, it is not reasonably probable defendant would have achieved a more favorable outcome in the absence of such error.  (*People v. Marks* (2003) 31 Cal.4th 197, 227 ["application of ordinary rules

7

of evidence like Evidence Code section 352 does not implicate the federal Constitution"; error is reviewed for state law error under reasonable probability standard of *People v. Watson* (1956) 46 Cal.2d 818].)

The evidence of defendant's guilt was strong. M.J. testified credibly and in some detail about defendant's assaultive behavior that culminated in him forcibly raping her in her own home. M.J.'s testimony was corroborated by the DNA evidence and the evidence documenting her physical injuries, including multiple photographs. None of the facts defendant now claims is objectionable in exhibit 28, such as defendant having been found to have violated probation and failing to appear in his prior domestic violence case, is more shocking or inflammatory than the details attested to by M.J. about defendant's conduct on the night of the rape. Moreover, defendant failed to present any defense that provided a coherent alternate explanation for how M.J. received her injuries, other than by attacking her credibility with the testimony of a longtime friend of defendant's. Defendant has not demonstrated it was reasonably probable he could have obtained a more favorable outcome had certain details from exhibit 28 been redacted.

Defendant argues the error violated his right to due process and therefore we should assess prejudice under the more stringent federal standard. "But the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*Partida, supra,* 37 Cal.4th at p. 439.) Defendant has not shown his trial was fundamentally unfair.

## 2.    Unanimity Instruction (Count 2)

Defendant contends the court erred by failing to instruct the jury it had to unanimously agree on which of the multiple acts of violence constituted the domestic violence charged in count 2 (Pen. Code, § 273.5).  We disagree.

The trial court has a sua sponte duty to provide a unanimity instruction if the evidence warrants it.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.)  But a unanimity instruction is not required where multiple acts committed by a defendant constitute a continuous course of conduct.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 879.)

As the Supreme Court explained in *People v. Williams* (2013) 56 Cal.4th 630, 682, " '[t]he "continuous conduct" rule applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.' "  In *Williams*, the prosecutor argued there were two crimes occurring close in time but the defendant "did not offer a defense based on a showing that he committed either the attempted robbery or the completed robbery, but not both.  Rather, his defense was that he was not present at the scene of the crime and therefore played no role whatsoever in any of the crimes committed there.  A unanimity instruction therefore was *not required*."  (*Ibid.*, italics added.)

The same analysis applies here.  Defendant offered only one defense based on the victim's credibility.  Defendant did not offer different defenses to the various violent acts attested to by M.J. that occurred over a period of hours culminating in the forcible rape.  Defendant argued *only* that M.J. was simply not to be believed—that none of the incidents of violence occurred and

9

that any injuries she suffered occurred through no fault of defendant's. A unanimity instruction was therefore not required.

Assuming for the sake of argument it was error to not give a unanimity instruction, we conclude any such error was harmless by any standard. Where, as here, "the defendant offered the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error.' " (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 577; accord, *People v. Jones* (1990) 51 Cal.3d 294, 307; *People v. Thompson* (1995) 36 Cal.App.4th 843, 853 [where "record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless"].)

### 3. Aggravating Factors

Defendant also contends the court committed sentencing error by making improper dual use of two aggravating factors. Defendant says the court misapplied the factors that defendant occupied a position of trust with his victim and used violence, both of which were elements of the charged offenses.

Defendant forfeited this contention by failing to raise it in the trial court. In *People v. Scott* (1994) 9 Cal.4th 331, 356, the court held that "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." This includes complaints that the court erred "because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Id*. at p. 353.)

10

We reject defendant's contention the sentence imposed was unauthorized such that the doctrine of forfeiture does not apply. The court took great care in considering defendant's argument regarding the statutory changes effected by Senate Bill No. 567 (2021–2022 Reg. Sess.) and Assembly Bill No. 124 (2021–2022 Reg. Sess.) and his request to impose a low term sentence pursuant to Penal Code section 1170, subdivision (b)(6). The court allowed supplemental briefing and allowed ample opportunity for argument. The court said it believed defendant had suffered childhood trauma that may have contributed to defendant's criminal conduct, but specifically noted several times that it was relying on the statutory exception to impose a midterm sentence. The court referred to the statutory language of subdivision (b)(6), explaining that a low term sentence need not be imposed where the court finds "the aggravating circumstances outweigh the mitigating circumstances, [and] that imposition of the lower term would be contrary to the interest of justice. I do find that to be the case."

The court made clear it was concerned with defendant's criminal history and his inability to learn from past mistakes. The court referred to defendant's behavior as predatory and that he had to consider defendant's "long history of abusing women" in crafting an appropriate sentence. The court also pointed out that defendant's Static 99 score was a 5, meaning he was an above average risk for reoffending. The court then recited the six aggravating factors it had previously found true and imposed a midterm sentence on both counts and ran the terms concurrently. The court acted well within its sentencing discretion and within the bounds of the applicable statutory law.

11

In any event, any error was harmless.  Defendant does not challenge the court's findings on four of the aggravating factors: defendant's prior convictions were numerous or of increasing seriousness, defendant had served a prior term in prison or county jail, defendant was on probation at the time the current offenses were committed, and defendant's prior performance on probation was unsatisfactory.  These four factors, related to defendant's criminal history and recidivism, amply support the court's sentencing choices.  Given the court's focus on defendant's criminal history throughout the sentencing proceedings, defendant has not demonstrated a reasonable probability of a different outcome.

## DISPOSITION

The judgment of conviction is affirmed.

GRIMES, Acting P. J.

WE CONCUR:

WILEY, J.

VIRAMONTES, J.

12